WESTINGHOUSE ELECTRIC & MFG. CO. v. CONDIT ELECTRICAL MFG. CO.

(Circuit Court of Appeals, Second Circuit. January 12, 1909.)

No. 120.

PATENTS (§ 328*)—INFRINGEMENT—AUTOMATIC CIRCUIT BREAKER.

The Wright & Aalborg patent, No. 633,772, for an automatic circuit breaker, is for a new combination of old elements, and discloses invention, and, while in no sense a pioneer, is entitled to some range of equivalents. As so construed, *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 159 Fed. 144, 154.

Clifton V. Edwards and Edward P. Payson, for appellant.

Kerr, Page & Cooper (Thomas B. Kerr and John C. Kerr, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This is a suit for the alleged infringement of claims 2 and 5 of letters patent No. 633,772 granted September 26, 1899, to Gilbert Wright and Christian Aalborg, assignors to the complainant, for an improvement in automatic circuit breakers. The invention—according to the patent—"relates to devices employed for automatically opening electric currents upon the passage therethrough of a current materially in excess of that which the circuit is intended to carry." The fourfold object of the invention—according to the patent—

"is to provide (1) a circuit breaker that shall have a large current-carrying capacity in proportion to the mechanical dimensions of the device, (2) which shall be easily brought into operative position and locked therein, (3) which shall be certainly and quickly opened whenever the current in the circuit exceeds that for which the locking mechanism is set, and (4) which shall serve to interrupt the circuit without danger of injury to the main contact terminals."

The first object is accomplished by employing movable laminated copper terminals with beveled ends so pivoted that they can be moved into contact with the faces of two vertically aligned copper stationary terminals. The arrangement is such as to require but little lateral space upon the switchboard, and the use of the laminated member and the method of contact give large current-carrying capacity in proportion to the dimensions of the device. The second object is accomplished by the use of a lever arm and toggle mechanism by which the movable terminals are readily and with powerful compression brought into contact with the stationary terminals where they are locked by an automatically

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

acting latch. The third object is accomplished by means of a magnetic circuit operating an armature which trips the latch holding the terminals in position and opens the circuit whenever the current exceeds that for which the locking mechanism is set. The fourth object is accomplished by the use of a stationary shunt terminal of carbon above the main terminals, which contacts with a movable shunt terminal likewise of carbon pivoted and spring actuated upon an upward extension of the frame bearing the main movable terminals. When the circuit breaker is brought to a closed position, the shunt terminals contact before the main terminals. When it is opened, the shunt terminals remain in contact until after the main terminals have separated. By this early closing and late opening of the shunt circuit the danger to the main contact terminals from the electric arc is prevented.

But while these are the general objects of the invention and the means employed for attaining them, the objects were old and the means —as individual elements—not new. The invention is in no sense a pioneer one. The patent can be sustained, if at all, only as a combination of old elements producing a new result, or, at least, producing an old result in a more efficient way. The complainant recognizes this, and the especial advantages which it claims for the invention are: (1) The breaking of the circuit upward in a straight line, away from the main terminals and switchboard, so that the resulting arc is less liable to injure the apparatus. (2) The final separation of the parts with the highest velocity and over the widest space possible, so that the extinction of the flame is certain and rapid and the chances of injury slight. (3) The vertical arrangement of the different contacts, so that but little of the valuable lateral space upon the switchboard is occupied. (4) The relation of the contacts to the manipulating apparatus, so that they are readily and efficiently brought into and held in position as well as readily separated. By reason of these advantages it is claimed that the device of the patent has gone into extensive use.

The defendant contends, however, that both the elements of the combination of the patent and the combination itself are old, and are anticipated by earlier patents. But while several of the devices shown in the prior art present different features of the patent, we are not satisfied that the combination is anywhere shown. Giving the most careful consideration to the contentions of the defendant, we still regard it as extremely doubtful whether the patent can be properly held invalid for lack of invention in view of the prior art. In this situation the decision of the Circuit Court of Appeals for the Third Circuit in Westinghouse Electric, etc., Co. v. Cutter Electrical, etc., Co., 143 Fed. 966, 75 C. C. A. 152, sustaining the claims of the patent now in suit, is entitled to great weight. That decision was rendered upon substantially the same testimony presented here. Any prior patents which are here and were not there are far less persuasive in the defendant's favor than those which were there. It seems to us that this is a case where it is most appropriate that we should follow the decision, made after careful consideration, by a court of co-ordinate

jurisdiction. We therefore hold that claims 2 and 5 of the patent are valid, and the remaining question is one of infringement.

These claims are as follows:

"2. In an automatic electric circuit breaker, the combinations with base and stationary main and shunt contact terminals located in approximately vertical alignment thereon, of a movable laminated contact member pivoted to said base, a movable shunt-contact member pivoted to said laminated contact member, toggle levers for operating said movable members, means for locking the breaker in closed position, and a tripping device projecting into a magnetic circuit."

"5. In a circuit breaker, the combination with main stationary contact terminals and a stationary shunt terminal located above the same, of a pivoted main contact member, a shunt-contact member pivoted to said main member at a distance from its axis of movement, means for yieldingly holding the movable shunt contact in a position in advance of the plane of the faces of the main movable member when in open position, toggle-lever mechanism for closing the breaker, a latch and electromagnetically-actuated means for tripping the latch, said toggle lever, latching and tripping mechanism being located below the main and shunt separable terminals."

The defendant's device obviously possesses all the elements of these claims in similar combination, with the possible exception of the "movable shunt-contact member pivoted to said laminated contact member" of claim 2, and the "shunt-contact member pivoted to said main member at a distance from its axis of movement," of claim 5. In the defendant's device the carbon contact member is not pivoted to the main member, but is attached and held by a spring. That is the only difference.

In both devices the function of the movable carbon is to so adjust the contact between it and the stationary carbon as to permit the main contact to close after the carbon contacts are closed and open before the carbon contacts are opened. The motion is the same, the movement is in the same direction, and the result is the same. The two devices are practically interchangeable. The spring-pressed pivot member would work upon the defendant's structure and vice versa. Indeed, we think the complainant's expert justified in thus describing the action of the two devices as mechanically the same:

"The action of the spring is the same as the pivot of the device shown in the patent in suit. Mechanically it is the same, since there is the same turning action in defendant's device as in the structure shown in the patent; but the pivotal point, instead of being located in close proximity to the carbon, is distributed throughout the length of the spring support."

While, in view of the prior art, the complainant is not entitled to a broad construction of the patent, we think that it is entitled to a sufficiently liberal construction to cover as an equivalent the defendant's structure. If it has the right to any range of equivalents at all—and we hold that it has—the spring must be treated as an equivalent for the pivot.

But the defendant urges that, if a spring-mounted shunt device is the equivalent of a pivotal shunt device, there were several such devices in the prior art; that, if the defendant's device would infringe, the earlier devices would anticipate. This contention might be well founded if the patent covered merely a pivotal shunt contact. But,

as we have already seen, it covered a combination of which such contact member was only one element. The fact that this element by itself may have been anticipated does not affect the validity of the patent for the combination. As we have already seen, all the elements may be old, and yet, if the combination and results be new, a patent may be valid.

The decree of the Circuit Court is affirmed, with costs.